IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

SHEILA ISOM

                  Plaintiff,

    v.

                             Case No.13-2602-RDR

MIDWEST DIVISION-OPRMC, LLC

                  Defendant.

## <u>MEMORANDUM AND ORDER</u>

This is an employment discrimination action in which plaintiff alleges that she suffered from a hostile work environment because she is a woman and that she was terminated from her employment because she complained about the hostile work environment. Plaintiff claims that defendant's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiff has also alleged a supplemental state law claim asserting that her termination violated Kansas public policy.

This case is before the court upon defendant's motion for summary judgment. Defendant alleges that plaintiff is incapable of proving the necessary elements of her Title VII claims. Defendant also argues, and plaintiff has conceded in response, that there is no legal basis for the supplemental Kansas law claim. Therefore, in this order the court shall focus only upon the Title VII claims.

I.   SUMMARY JUDGMENT STANDARDS

Summary judgment is warranted if the materials on record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.CIV.P. 56(a).  The court views "all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007).  From this viewpoint, the court attempts to determine whether a reasonable jury could return a verdict in favor of the non-moving party. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004).  Although the court examines the record "in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." Piercy, 480 F.3d at 1197.  In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).  "If the evidence [in support of a claim] is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986)(interior citations omitted). "[P]urely conclusory allegations of discrimination" which are

2

devoid of "concrete particulars" are not sufficient to avoid summary judgment. Pucino v. Verizon Wireless Communications, Inc., 618 F.3d 112, 119 (2d Cir. 2010)(interior quotations omitted); see also, Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)(non-moving party must set forth specific facts admissible in evidence from which a rational jury could find for non-movant). Unsubstantiated allegations also carry no probative weight; "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." Bones, 366 F.3d at 875. Therefore, plaintiff's belief that she was discriminated against is not sufficient to rebut evidence that plaintiff was terminated for nondiscriminatory reasons. Sharon v. Yellow Freight Sys., Inc., 872 F.Supp. 839, 847 (D.Kan. 1994).

II.  UNCONTROVERTED FACTS

During the time relevant to this lawsuit, plaintiff worked as a computerized tomography technician (a "CT Tech") for a hospital owned by defendant. Plaintiff started her employment on August 29, 2005. She was terminated on or around August 24, 2012.

On February 19, 2012, plaintiff emailed Anna Johnson and Wilma Jenkins, her supervisors, stating:

> Called Moses Kinyanjui, asked him to help with getting
> the patient down, he stated "I will tell Dr. Muhammaed
> (sic) you are too busy to scan patient". I explained

3

> the ER was busy, therefore I needed help, he stated
> the same thing.  His anger from this time and prior
> times has frightened me, I do not feel comfortable
> working or speaking to him.  Notified Bernadette, she
> said she would call Moses, called her back 45 minutes
> later, she said just make a report.

Prior to writing this email, plaintiff had complained about the incident with Kinyanjui to Bernadette Sims, her shift supervisor.

Kinyanjui was a registered nurse at the hospital.  He did not work in plaintiff's department.

Jenkins, the Director of Imaging, and Connie Miller, the Director of Human Resources, met with plaintiff on February 20, 2012 to discuss her complaint of the previous day.  Miller also discussed the complaint with Debbie Galant, the director of Kinyanjui's department, and with Kinyanjui.  Galant said that Kinyanjui was quiet, had good patient skills, and got along with other staff.  Kinyanjui said he merely explained to plaintiff during their phone call that his unit was very busy and he would call the doctor to see if the needed scan could be performed at a different time.

As a result of her investigation, Miller concluded that she could not substantiate plaintiff's complaint.  But, she advised Kinyanjui that any further concerns with his behavior would be addressed and could lead to disciplinary action if substantiated.

Plaintiff has testified that Kinyanjui harassed plaintiff by yelling angrily at her and by staring at her – – not in a sexual way but in a hostile way. She testified that he had yelled at plaintiff prior to the February 19, 2012 phone call and that that Kinyanjui interacted with her unpleasantly about "a half dozen times" before the February 19th incident. Each time, plaintiff alleges, Kinyanjui yelled angrily and threateningly at plaintiff. His "threats" involved telling a doctor if plaintiff did not do what Kinyanjui wanted done. But, he never yelled at her after the February 19th incident. He did, however, stand and stare at her when he saw her after February 19th until June 2012. The record is not clear as to how often this happened. Plaintiff has stated that Kinyanjui was physically intimidating, but she has not alleged that he threatened her physically, only that, on February 19, 2012, he "threatened" to call a doctor and say that plaintiff refused to do a scan when plaintiff tried to explain that she was too busy in the ER.

Plaintiff testified in her deposition that she did not know if Kinyanjui ever yelled at male employees, but she didn't believe he would have yelled at a male employee as he yelled at her.

Plaintiff alleges that on two occasions, once in April and once in May 2012, Kinyanjui asked other hospital employees about

plaintiff's schedule.   Plaintiff says that this frightened her.
Each time, plaintiff emailed Jenkins to complain.   Miller
investigated but failed to corroborate plaintiff's complaints.
Plaintiff has no complaints about Kinyanjui's conduct after May
2012.

About August 12, 2012, plaintiff responded to an anonymous
employee survey.   She stated that she had received no response
to her complaints of Kinyanjui allegedly inquiring about
plaintiff's schedule.

On August 20, 2012, the hospital received a report from a
CT Tech that plaintiff brought a gun to work, showed it to an
employee in a public area and then placed it in a drawer inside
a cabinet.   The hospital has a policy prohibiting weapons in the
workplace.   This policy existed throughout plaintiff's years of
employment at the hospital.   Plaintiff has acknowledged that
employee handbooks have stated versions of the policy.

Miller and the Chief Operating Officer, Dean Carucci,
investigated the report that plaintiff brought a gun into the
hospital on August 20, 2012.   They spoke with plaintiff (who
denied the report), with the person who made the report (who
repeated the charge), and with a doctor (who corroborated the
report).   Miller and Carucci believed plaintiff brought a gun
into the hospital.   Thereafter, plaintiff was terminated.
According to the August 24, 2012 letter mailed to plaintiff from

the hospital, plaintiff was terminated "due to violation of policy prohibiting weapons of any kind to be carried on the premises."

During the discovery phase of this litigation, plaintiff has admitted that she brought a gun to the hospital on various occasions at the request of persons at the hospital who wanted to see it.

III. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM SHALL BE DISMISSED BECAUSE THE RECORD LACKS EVIDENCE IN SUPPORT OF ESSENTIAL ELEMENTS OF THE CLAIM.

To ultimately succeed upon her hostile work environment claim, plaintiff must show: 1) that she was discriminated against because of her sex; and 2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment. Morris v. City of Colorado Springs, 666 F.3d 654, 663 (10th Cir. 2012)(quoting Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1058 (10th Cir. 2009)).

Defendant makes three arguments to dismiss plaintiff's hostile work environment claim. As explained below, defendant's first two arguments are meritorious. Therefore, for purposes of brevity, the court will not address the third argument.[1]

---

[1] Defendant's third argument against the hostile work environment claim is that defendant made an adequate response to plaintiff's complaints regarding Kinyanjui and therefore is not liable for his actions.

Defendant contends, first, that plaintiff cannot establish that she was harassed or suffered a hostile work environment on the basis of her sex. As just mentioned, the intent to discriminate on the basis of sex is a required element of proof. Ridgell-Boltz v. Colvin, 565 Fed.Appx. 680, 685 (10th Cir. 2014)("'[t]he plaintiff must produce evidence that she was the object of harassment because of her gender'")(quoting Chavez v. New Mexico, 397 F.3d 826, 833 (10th Cir. 2005)). Here, there is no evidence that defendant's officers, plaintiff's supervisors, or even Kinyanjui acted with a gender bias. There is only evidence that, according to plaintiff, Kinyanjui yelled at two other female employees. There is no evidence as to what he said to other female employees or evidence that it may have been caused by a discriminatory animus. Plaintiff has stated that she believed Kinyanjui would not have yelled at a male employee, but this is mere speculation and conjecture. It does not suffice to generate a material issue of fact. See Wagoner v. Pfizer, Inc., 391 Fed.Appx. 701, 709 (10th Cir. 2010)(mere speculation of differential treatment is insufficient); Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988)(rejecting conjecture that employer's explanation is a pretext for intentional discrimination as a basis for denying summary judgment).

Second, defendant argues that plaintiff cannot establish that Kinyanjui's alleged conduct was sufficiently severe or pervasive to constitute a hostile work environment.  The court agrees with this contention.  This court has described the level of proof necessary to establish a hostile work environment in Lounds v. Lincare, Inc., 2014 WL 3361751 *8 (D.Kan. 7/9/14):

> The issue raised by defendant's summary judgment motion is whether plaintiff's work environment was objectively hostile and offensive.  This is a required element for making a hostile work environment claim. Morris v. City of Colorado Springs, 666 F.3d 654, 664 (10th Cir. 2012).  We must examine "'the objective severity of the harassment from the perspective of a reasonable person in plaintiff's position, considering all the circumstances.'"  Id., quoting Harsco Corp. v. Renner, 475 F.3d 1179, 1187 (10th Cir. 2007).  Some factors which have been suggested for consideration are: "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Id. quoting, Chavez v. New Mexico, 397 F.3d 826, 832-33 (10th Cir. 2005).  The court must determine whether the alleged harassment was pervasive or severe.  Id. at 663.
>
> To survive summary judgment, a plaintiff "must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ."  Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 957 (10th Cir. 2012)(interior quotations omitted); see also, Sandoval v. City of Boulder, Colo., 388 F.3d 1312, 1326-27 (10th Cir. 2004).  "[R]un-of-the mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."  Morris, 666 F.3d at 664.
> . . . .

The Tenth Circuit has stated that a hostile work environment generally entails a "steady barrage of opprobrious racial comments." Herrera v. Lufkin Indus., Inc., 474 F.3d 675, 680 (10th Cir. 2007)(quoting Chavez, 397 F.3d at 832); Ford v. West, 222 F.3d 767, 777 (10th Cir. 2000)(quoting Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994)). According to the Oxford English Dictionary, "opprobrious" means expressing scorn; vituperative; reproachful; shameful.  The Merriam-Webster Dictionary includes "scurrilous" as one of the definitions.

In this case, plaintiff alleges that Kinyanjui yelled at her over the phone or in person five or six times, on and before February 19, 2012, and said that if plaintiff did not do what Kinyanjui wanted done then he would tell a doctor.  Thereafter, Kinyanjui did not speak to plaintiff, but when he happened to see her he would stare at her, but not in a sexual way. Plaintiff also alleges that once in April 2012 and once in May 2012, Kinyanjui asked other employees about plaintiff's work schedule.  Plaintiff had no complaints about Kinyanjui's conduct after May 2012.

Assuming these allegations are true, the court does not believe a reasonable person would consider this severe or pervasive misconduct for the purposes of a Title VII hostile work environment claim.  These actions were not physically threatening or humiliating.  They were not offensive in a sexual sense.  Nor do they appear to have interfered with plaintiff's work performance.  Plaintiff does not describe a workplace

10

permeated with discriminatory intimidation, ridicule or insult.
Plaintiff does not indicate that profane or opprobrious language
was used.   Instead, this appears to be a situation in which
there where a half-dozen instances of ill-tempered communication
with a person who was not plaintiff's supervisor.   This is not
sufficient for a hostile work environment claim, even if one
adds that plaintiff was told (by someone other than Kinyanjui)
that he had inquired twice about her work schedule.   See Morris,
666 F.3d at 665-66 (being yelled at and having work demeaned
with comments such as "get your ass in gear" or "get someone in
here who knows what they are doing" does not suffice to prove
hostile work environment); Owhor v. St. John Health-Providence
Hosp., 503 Fed.Appx. 307, 312 (6th Cir. 2012)(being yelled at not
to wear scrubs and for other reasons does not demonstrate an
objectively hostile work environment); Sprague v. Thorn
Americas, Inc., 129 F.3d 1355, 1366 (10th Cir. 1997)(five
incidents of unpleasant and boorish conduct over 16 months is
not sufficient to prove hostile or abusive work environment);
see also, Held v. Ferrellgas, Inc., 505 Fed.Appx. 687 (10th Cir.
2012)(rude responses with a sharp tone, sighs, and off-putting
looks are not sufficient to establish a hostile work
environment); Mendoza v. Borden, Inc., 195 F.3d 1238, 1248-52
(11th Cir. 1999) cert. denied, 529 U.S. 1068 (2000)(following and
staring at work did not amount to sexual harassment); Olson v.

Shawnee County Board of Comm'rs, 7 F.Supp.3d 1162, 1182 & 1203
(D.Kan. 2014)(being addressed with a loud and gruff tone is not
"severe"); Johnson v. City of Murray, 909 F.Supp.2d 1265, 1285
(D.Utah 2012)(being glared at once or twice a month is not
actionable discrimination for the purposes of a hostile work
environment claim).

IV. PLAINTIFF'S RETALIATION CLAIM SHALL BE DISMISSED BECAUSE THE
RECORD LACKS EVIDENCE TO DEMONSTRATE THAT DEFENDANT'S REASON FOR
PLAINTIFF'S TERMINATION IS A PRETEXT FOR RETALIATION.

Defendant makes two arguments against plaintiff's
retaliation claim. First, defendant argues that plaintiff
cannot establish a prima facie case of retaliation because
plaintiff cannot present proof of a causal connection between
the protected activity and plaintiff's termination.[2]   Second,
defendant contends that plaintiff cannot dispute that defendant
had a legitimate, non-discriminatory reason for terminating
plaintiff.

As for defendant's first claim, plaintiff contends that the
temporal proximity between her termination on August 24, 2012
and plaintiff's completion of an anonymous survey earlier that
month is adequate to meet her prima facie burden of showing a
the causal connection between her alleged protected activity and

---

[2] This is one of the elements of a prima facie case of retaliation. See
Daniels v. United Parcel Service, Inc., 701 F.3d 620, 638 (10th Cir.
2012)(listing the elements of a prima facie case).   The other two elements
are that plaintiff engaged in protected opposition to discrimination and that
plaintiff suffered a materially adverse employment action.   Defendant does
not dispute that plaintiff can present proof of these two elements.

her termination.   Plaintiff alleges that her responses to the survey should be considered protected opposition to discrimination because she outlined her complaints about Kinyanjui in the survey and stated that Jenkins and Miller had not investigated her complaints.   We acknowledge defendant's rejoinder that Kinyanjui, Jenkins and Miller were not mentioned in any of the survey responses.   But, for the purposes of this order, the court shall assume plaintiff is correct and move forward to consider defendant's second argument against plaintiff's retaliation claim.

Defendant's second argument asserts that there is no material issue of fact as to pretext.   While plaintiff has presented facts indicating a temporal relationship between plaintiff's alleged protected activity and her termination, this is only sufficient to establish a prima facie case of retaliation, not to demonstrate that defendant's non-retaliatory reason for termination was actually a pretext for retaliation. The Tenth Circuit has stated that "temporal proximity is sufficient to establish a prima facie case, but not to establish pretext, because the evidentiary burden is different."   Proctor v. United Parcel Serv., 502 F.3d 1200, 1213 n.6 (10th Cir. 2007)(emphasis added).   Plaintiff has the burden to produce evidence demonstrating a genuine issue of material fact exists as to whether defendant's proffered justification for

plaintiff's termination is merely a pretext for illegal retaliation.  See Hinds v. Sprint/United Management Co., 523 F.3d 1187, 1197 (10th Cir. 2008)(applying this burden in an age discrimination case); Macon v. United Parcel Service, Inc., 743 F.3d 708, 713 (10th Cir. 2014)(applying this burden in a worker's compensation retaliation case).  "Such a showing, so long as it would allow a reasonable jury to find the discharge was pretextual, entitles the plaintiff to proceed to trial." Macon, supra.  Plaintiff must present evidence that defendant's proffered reason for terminating plaintiff is so incoherent, weak, inconsistent or contradictory that a rational factfinder could conclude the reason is unworthy of belief.  Hinds, 523 F.3d at 1197 (quoting Young v. Dillon Cos., Inc., 468 F.3d 1243, 1250 (10th Cir. 2006)).

Plaintiff has set forth no information directly indicating that defendant's claim of a valid nondiscriminatory reason for its termination of plaintiff is incoherent, weak, inconsistent or contradictory.  Plaintiff suggests that temporal proximity itself is sufficient to create a jury issue and avoid summary judgment.  But, as mentioned, this is not the position of the Tenth Circuit in Proctor. See also, Lobato v. New Mexico Environment Dept., 733 F.3d 1283, 1293 (10th Cir. 2013).

Plaintiff also makes citation to Allen v. Miami County Emergency Medical Service, 1997 WL 624864 (D.Kan. 9/15/1997).

14

But, this case is distinguishable.  In <u>Allen</u>, the plaintiff claimed that she was a victim of sexual harassment when she worked in a county EMS office and that she was fired in order the "solve" the sexual harassment problem by removing her from the office.  She was hired later, however, as a dispatcher for the county and for that reason continued to have contact with the EMS office.  In considering the question of pretext,[3] the district court looked at evidence of the temporal proximity between the plaintiff's complaints of sexual harassment and her termination <u>as well as</u> evidence that the official who fired the plaintiff expressed dissatisfaction with the fact that, after the plaintiff's termination, she was hired for another position with the county where she would have contact with the EMS department.  The court construed all of this as evidence that the "initial discharge from the EMS was motivated by a desire to get rid of the sexual harassment problem by discharging the victim."  <u>Id.</u> at *9.  In contrast, in the case at bar plaintiff relies upon temporal proximity <u>alone</u> as evidence of pretext.

Plaintiff has no adequate and convincing evidence from which a reasonable jury could conclude that her termination was motivated by retaliation, rather than the violation of the hospital's prohibition of guns on hospital grounds.  Therefore,

---

[3] Defendants alleged that the plaintiff was fired for engaging in improper activity while on duty.

defendant is entitled to summary judgment against plaintiff's retaliation claim.

V. CONCLUSION

As already mentioned, plaintiff has conceded that summary judgment is proper against plaintiff's state law claim. Because plaintiff's other two claims lack sufficient factual support even when viewing the evidence in a light most favorable to plaintiff, the court shall grant defendant's summary judgment motion.


**IT IS SO ORDERED.**

Dated this 7th day of January, 2015, at Topeka, Kansas.

                              s/RICHARD D. ROGERS
                              Richard D. Rogers
                              United States District Judge